RECEIVED
IN ALEXANDRIA, LA.

AUG 2 6 2014

TONY R. MOORE, CLERK
             DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TAMIKA MASON | CIVIL ACTION NO. 13-0233 |
| -vs- | JUDGE DRELL |
| AFFORDABLE RENT-TO-OWN LLC | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a "Motion for Summary Judgment" filed by Defendant, Affordable Rent-to-Own LLC (Doc. 17). Defendant filed an "Amended Motion for Summary Judgment" allowed by the Court on June 16, 2014.[1] (Doc. 25). All responses have been submitted, and the matter is ready for disposition. For the following reasons, the motion will be **GRANTED in PART** and **DENIED in PART**.

I.   **Factual and Procedural Background**

Tamika Mason, Plaintiff, started working at Affordable Rent-to-Own LLC ("Affordable") in Marksville, Louisiana in April of 2008. (Deposition of Tamika Mason, Doc. 20-2 at 3). Ms. Mason began her Affordable Rent-to-Own career as an account manager at the Marksville location. (Id. at 10). Ms. Mason was promoted to assistant store manager and then to store manager in 2010. (Id.). Mr. Lonnie Brown was Ms. Mason's zone manager and consequently, her supervisor and "direct report."[2] (Id.). Mr.

---

[1] The Court ordered Defendant to correct factual inconsistencies and misrepresentations found in its original brief on June 6, 2014. (See doc. 24).

[2] The term "direct report" is a term of art for this employer referring to the person to whom an employee would report directly.

Joey Thompson was the regional manager for both Ms. Mason and Mr. Brown. (Id.; Deposition of Joey Thompson, Doc. 25-4 at 4, 6–7).

According to Plaintiff, Mr. Brown sexually harassed her at work on a regular basis. (State Court Petition, Doc. 1-6 at 1–2; Deposition of Tamika Mason, Doc. 25-3 at 2–3). Ms. Mason claims that approximately six months after she started working, she reported Mr. Brown's conduct to her store manager, Mr. Stephon Williams. (Doc. 20-2 at 2–3). Plaintiff avers Mr. Brown had told her she was hired because she had "big breasts" on several occasions. (Id. at 3–4). Plaintiff, an African American female, also contends Mr. Brown asked to accompany her to the bathroom and stated that "he wouldn't mind having sex with a black girl." (Id. at 4–5). According to Ms. Mason, she reported Mr. Brown's conduct to Mr. Williams on two or three occasions.[3] (Id. at 3).

Affordable Rent-to-Own's policies on sexual harassment are detailed in its employee handbook and the handbook states that harassment can be reported to any supervisors, to human resources, or anonymously to the "ARTO" hotline. (Doc. 25-3 at 47–49). Defendant contends Ms. Mason acknowledged receiving the Company's handbook and these policies and agrees she did not report the alleged harassment to the ARTO hotline, to human resources, or to any managers before February 29, 2014. (Id. at 46; Doc. 25-2 at 7).

Plaintiff alleges that despite her report to Mr. Williams, Lonnie Brown's harassment continued for nearly four years. (Plaintiff's Memorandum in Opposition, Doc. 20 at 3). As her direct report, Mr. Brown visited Ms. Mason's store location in Marksville

---

[3] Unfortunately, according to the record, Mr. Williams died unexpectedly in June 2013 before his deposition or sworn statement was taken. (Doc. 25-1 at 3, note 4).

one to three times per week. (Doc. 20-2 at 31–32). Plaintiff contends Mr. Brown "perpetrated the unwanted sexual advances the majority of the time during those visits" and hindered her pace of work. (Doc. 20 at 3–4). Ms. Mason alleges that Mr. Brown "continuously touched" her on the breasts and buttocks with his hands and genitals during this time. (Id. at 3; Doc. 20-2 at 23, 29). According to Plaintiff, Mr. Brown asked her to get under a desk and "suck his personal area" and invited her to have sex with him in the back seat of his new truck. (Doc. 20 at 3; Doc. 20-2 at 13). Plaintiff contends Mr. Brown also took her personal cellular telephone off of her desk at work and looked through her pictures, including nude photos of herself. (Doc. 25-3 at 30–31).

Mr. Joey Thompson, Regional Manager at Affordable Rent-to-Own, placed Ms. Mason on suspension on February 27, 2012, based on an internal auditing investigation into bogus contracts and missing inventory. (Doc. 25-4 at 26–29). Mr. Thompson testified in a deposition that he had enough information from internal investigators to fire her that day, but he suspended her instead to continue the inquiry. (Id.). On February 29, 2012, Ms. Mason reported Mr. Brown's alleged harassment to Mr. Thompson for the first time. (Id. at 29–30; Doc. 20-2 at 2). Ms. Mason's sexual harassment allegations were also investigated by Mr. Thompson, but he did not find her allegations to be credible. (Doc. 25-4 at 34–41).

The internal investigation into fraudulent contracts and unaccounted for inventory exposed that Ms. Mason's manager code was used on ten to fifteen bogus contracts associated with missing inventory for about thirty people who do not exist. (Doc. 25-3 at 25, 50–57; Doc. 25-4 at 12, 28). According to Mr. Thompson, the investigation began

after a past employee named Stephanie Williams called the company hotline to report the dishonest activity of her store manager, the plaintiff, Ms. Mason. (Doc. 25-4 at 15–16). Ms. Williams reported specifically that Ms. Mason had forged a contract for a customer to rent a Playstation, and that Ms. Mason was keeping that Playstation in her home. (Id. at 16–17).

Mr. Thompson testified that as part of his investigation, he asked Ms. Mason about the missing Playstation, and informed her the company may seek legal action if the issue was not resolved. (Id. at 17). According to Mr. Thompson, a woman came into the store the next afternoon, threw a Playstation on the counter, and said "here's y'all f-ing Playstation." (Id.). Mr. Thompson explained he was in the office that day and remembered the interaction because the woman was very rude and used profanity. (Id.). Another employee working that day, T.J. Batiste, allegedly identified the woman as Ms. Mason's sister-in-law. (Id. at 18). Mr. Thompson and Mr. Batiste turned on the Playstation to make sure it worked and the names of players with the highest scores on the Playstation were the same names as Ms. Mason's children. (Id. at 18–19).[4] The investigation uncovered that the returned Playstation was on a contract for a woman named Ms. Carol Alexander, but the Playstation was not added to Ms. Alexander's ongoing contract until after she died, either by Ms. Mason, or by someone using Ms. Mason's manager code. (Id. at 20). Additionally, another contract was made for an individual named Jimmy Bradford in January 2012 but he had been in jail since 2009.

---

[4] Mr. Thompson testified that he told the employees not to do anything with or delete anything from the Playstation and hold it in the back of the store. However, the Playstation was re-rented to someone the next day. (Doc. 25-4 at 19–20).

(Doc. 20-2 at 16). A current employee named Katina Stevenson also signed a note stating that her supervisor, Ms. Mason, asked her to sign certain paperwork (Exhibit 4) for furniture she did not have. (Statement of Katina Stevenson, Doc. 25-3 at 58; see also Doc. 25-3, Exhibit 4 at 50–57). Based on this investigation, Ms. Mason was discharged from her employment by Mr. Thompson on March 12, 2012. (Doc. 25-3 at 3, 59; Doc. 25-4 at 41–42). However, Ms. Mason presently maintains she never entered into any forged contracts. (Doc. 20-2 at 27). While she admits her manager code appears on the contracts at issue, Ms. Mason contends the employees she supervised had her manager code and password. (Doc. 20-2 at 16–17, 28).

Ms. Mason also alleges that after her termination, the continuous sexual harassment and retaliatory discharge caused her severe emotional distress. (Doc. 20 at 8). As a result, she claims to have lost twenty-five pounds and to be unable to work comfortably around men. (Id.). However, Plaintiff has never sought treatment from any health care providers for emotional distress. (Doc. 25-3 at 41–42). Plaintiff also testified that she did not have treatment for or issues with emotional problems, and was not on any medications for emotional problems. (Id. at 8–9).

On November 20, 2012, Ms. Mason filed her complaint with the United States Equal Employment Opportunity Commission and she was issued a Notice of Right to Sue letter on November 29, 2012. (Doc. 1-6 at 2). On January 14, 2013, she filed the underlying Petition for Damages against Defendant Affordable Rent-to-Own in the 12th Judicial District Court for Avoyelles Parish, asserting the outlined claims. (Notice of Removal, Doc. 1 at 1). Specifically, she alleges the claims constituted sexual harassment and

retaliation in violation of Title VII of the Civil Rights Act of 1964, as well as intentional infliction of emotional distress. (Id. at 2; Doc. 1-6 at 1–3). On January 29, 2013, Affordable Rent-to-Own removed the Petition to this Court as the claims involve questions of federal law. (Doc. 1 at 2). Defendant answered and also brought a counterclaim against Ms. Mason for fraud and unjust enrichment. (Answer, Doc. 8 at 10–12).

Defendant Affordable Rent-to-Own filed the present Motion for Summary Judgment on February 3, 2014. (Doc. 17 at 1). Affordable contends Plaintiff's claims for hostile work environment, retaliation, and intentional infliction of emotional distress, should be dismissed. (Doc. 25-2 at 9–15).

II.  **Law and Analysis**

A.  **Motion for Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011)(internal quotations omitted). It is important to note the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

B. **Hostile Work Environment under Title VII**

To establish a claim of hostile work environment under Title VII, Plaintiff must prove:

(1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a "term, condition, or privilege" of employment. Lauderdale v. Tex. Dept. of Criminal Justice, Institutional Div., 512 F.3d 157, 163 (5th Cir. 2007).

Here, it is undisputed that Plaintiff is a female and a member of a protected group. Defendant does not argue that any alleged harassment was not based on sex. (See Doc. 25-2 at 9–11). For the purposes of this motion, we accept Plaintiff's contention that the alleged harassment was based on sex. At issue, then, is whether Ms. Mason was actually the victim of uninvited sexual harassment and whether that harassment affected a term, condition, or privilege of employment.

*1. Whether the harassment was unwelcome*

To establish a claim of hostile work environment, Plaintiff must demonstrate that the harassment was "unwelcome." The Fifth Circuit gives the following examples of unwelcome harassment: "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." Jones v. Flagship Int'l, 793 F.2d 714, 719 (5th Cir. 1986).

Defendant argues that "Plaintiff's own conduct belies any characterization of Brown's conduct as unwelcome" because "the facts indicate beyond a doubt that Plaintiff was not offended by it." (Doc. 25-2 at 10). In her deposition, Plaintiff averred she left her phone unlocked on her desk and when Mr. Brown was at her store, he took her

7

phone and looked at her pictures, including nude photographs of herself, "all the time." (Doc. 20-2 at 21–23). Defendant contends that because Mr. Brown routinely took Ms. Mason's cell phone to look at her pictures, all with her knowledge, "[i]t is implausible that Plaintiff [was] offended by Brown's conduct." (Doc. 25-2 at 11). Defendant also argues the conduct was welcome because Plaintiff took off her outer pants in her "less-than-private [] office, which was easily witnessed by her subordinates as she did not use the more private restroom." (Id.).

Plaintiff contends there is sufficient evidence to show that Mr. Brown's harassment was unwelcome. (Doc. 20 at 4). Ms. Mason says she reported Mr. Brown's alleged misconduct to her supervisor Stephon Williams on two or three different occasions approximately six months after she started working for the company. (Id.; Doc. 20-2 at 2–3). It was then that Mr. Brown told her he hired her because she had big breasts, asked to accompany her to the restroom, and said he wouldn't mind having sex with a black girl. (Doc. 20 at 4). She is said to have told Mr. Brown not to touch her on numerous occasions; Mr. Brown said he wasn't trying to offend her but she was a "fine black girl." (Id.). Contrasting Defendant's argument, Plaintiff denies showing any sexual photographs of herself to any co-worker. (Id. at 4–5). Also, Plaintiff claims she only removed her pants in her office because of an allergic skin reaction, and she was not in open view of the store or her co-workers. (Id. at 5).

The Court must view the facts alleged in the light most favorable to the nonmoving party. Mr. Brown's alleged harassment is objectively offensive and Plaintiff has produced evidence that Mr. Brown's conduct was not invited. For the limited

purposes of this summary judgment motion, the Court finds sufficient genuine issues of material fact as to whether the alleged harassment was unwelcome.

*2. Whether the harassment affected a term, condition or privilege of employment*

To prevail on a sexual harassment claim, the harassment "must be sufficiently severe or pervasive 'to alter the conditions of the [plaintiff's] employment and create an abusive working environment.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (additional citations omitted). The district court must look at the totality of the circumstances to determine whether a work environment is "hostile" or "abusive" under Title VII. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Factors to consider include: "the frequency of the [] conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably [interfered] with an employee's work performance." Id. The Supreme Court has instructed that the harassment must be more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (additional citations and internal quotations omitted). To be actionable under Title VII, the conduct at issue must be both objectively offensive, meaning that a "reasonable person would find [it] hostile and abusive," and subjectively offensive, meaning that the victim actually perceived it to be offensive. Harris, 510 U.S. at 21–22; see also E.E.O.C. v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444, 460 at n. 15 (5th Cir. 2013).

Defendant contends Mr. Brown's conduct was not severe or pervasive enough to alter a term or condition of Plaintiff's employment. It points to the admissions in her deposition that the alleged harassment did not affect her work performance:

9

> Q: Were you still able to do your job? Could you still function as the store manager?
> A: Oh, I did my job, yes, sir.
> Q: Were you still able to make your bonuses and your commissions?
> A: Yes, sir.
> Q: Were you still able to supervise the male subordinates that worked for you?
> A: Yes, sir.

(Doc. 25-3 at 35–36). Defendant argues Plaintiff herself downplayed the alleged misconduct by telling Mr. Brown to "stop playing" on at least one occasion. (Doc. 25-2 at 10; see also doc. 25-3 at 35). Defendant further contends Ms. Mason's work performance was not affected because she would simply walk away from him and return to work after Mr. Brown allegedly harassed her. (Doc. 25-2 at 10). It is Defendant's position that Mr. Brown only impeded her ability to work by wanting to talk to her or to run errands with her, neither of which is harassment. (Id.). All this, according to Defendant is from Plaintiff's own testimony.

Plaintiff disagrees, and urges that Mr. Brown's alleged harassment was pervasive and severe, and interfered with her job performance. Plaintiff says now that Mr. Brown impeded the ability to do her job by slowing her down. (See Doc. 25-3 ay 39–41). She often had to do Mr. Brown's work in addition to her own. (Id.). According to Plaintiff, Mr. Joey Thompson, Mr. Brown's direct report, told Ms. Mason that he knew she was doing Mr. Brown's work, according to Plaintiff. (Id. at 40–41).

On the issue of frequency, Plaintiff argues she was "continuously touched" by hands and genitals on the breasts and buttocks by Mr. Brown over a nearly four year period. (Doc. 20 at 3; Doc. 20-2 at 23, 29). The alleged harassment is said to have begun approximately 4–6 months after Ms. Mason began working at Affordable in April 2008 and ended in February 2012 when Ms. Mason was suspended from work.

10

(Doc. 20 at 4; Doc. 20-2 at 4, 31). Mr. Brown generally visited Plaintiff's store of employment one to three times per week. (Doc. 20-2 at 31–32). According to Plaintiff, Mr. Brown "perpetrated the unwanted sexual advances the majority of the time during those visits" and hindered her pace of work. (Doc. 20 at 4).

Turning to the issue of severity, the Fifth Circuit has said in a nonpublished opinion that the touching of intimate body parts is severe enough to alter the material terms or conditions of employment if it is done continually or habitually. Paul v. Northrop Grumman Ship Sys., 309 Fed. Appx. 825, 828 (5th Cir. 2009)(noting "[t]he type of non-consensual physical touching alleged by [plaintiff] was held to be actionable under Title VII only in cases where it was chronic and frequent"). In McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx. 307, 310 (5th Cir. 2006), the Fifth Circuit observed that chronic unwanted touching, including touching on the breasts and thigh over a year-long period, repeated demands for hugs and kisses, and other inappropriate behavior supported a hostile work environment claim. The repeated unwanted fondling and rubbing of plaintiff's breasts and buttocks and unwanted kissing on the cheek over a seven-month period, despite her protests on every occasion, was deemed sufficiently severe or pervasive in Harvill v. Westward Communs., L.L.C., 433 F.3d 428, 435–36 (5th Cir. 2005). In these cases, the pervasiveness of the alleged harassment was deemed sufficient to alter the terms and conditions of the plaintiff's employment.

Viewing the facts in the light most favorable to the nonmoving party, the Court finds the alleged conduct of Mr. Brown, if true, to be objectively offensive. The alleged harassment spanned over a period of several years and the conduct consisted of the

unwanted touching of intimate body parts, sexual comments, and lascivious solicitations. This record generates genuine disputes of material fact as to whether the conduct did or did not occur. Whether Mr. Brown's alleged conduct unreasonably interfered with Plaintiff's work, was pervasive, and was severe enough to constitute a change in the terms and conditions of Ms. Mason's employment is sufficiently contested. Because genuine disputes of material fact remain, on all of these principal issues, summary judgment is improper at this time.

### 3. Whether Defendant is entitled to Faragher / Ellerth Defense

After an employee has established a *prima facie* case for a claim of hostile work environment, an employer may present the "Faragher / Ellerth" affirmative defense. The defense is so named as having been jurisprudentially formulated in Faragher v. Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) on the same day. The purpose of the affirmative defense was "to accommodate the agency principles of vicarious liability fir harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." It is applicable to and can provide a complete defense to a claim of hostile work environment "created by a supervisor with immediate (or successively higher) authority over the employee ... [w]hen no tangible employment action is taken." Ellerth, 524 U.S. at 765. To prevail on this affirmative defense, Defendant must show: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that the plaintiff employee "unreasonably failed to take advantage of any

preventative or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

Affordable suggests that however meritorious Plaintiff's hostile work environment claim seems, it should be dismissed because it had a system in place to prevent and correct any sexually harassing behavior, and Plaintiff did not take advantage of any preventative or corrective opportunities available. (Doc. 25-2 at 11–13). In this, Affordable points to its policies on sexual harassment outlined in its employee handbook. The handbook clearly provides that harassment can be reported to any supervisors, human resources, or anonymously to the ARTO hotline. (Doc. 25-3 at 48–50). Plaintiff acknowledged receiving the Company's handbook containing its policies on sexual harassment, but and did not report the alleged harassment to Mr. Thompson, human resources, or the ARTO hotline. (Id.).

However, Plaintiff asserts that Defendant relies on a written acknowledgment of receipt for a personnel policy, which receipt was signed by Tamika Mason on October 29, 2010. (Doc. 20 at 5). Yet, Plaintiff says Defendant cannot provide evidence showing she had notice of this policy between her start date in April 2008 and October 29, 2010 when she signed the receipt. (Id.). Plaintiff also contends she reported Mr. Brown's offensive conduct to her then-supervisor Stephon Williams, on multiple occasions. (Id.). Furthermore, Plaintiff argues that there is no affirmative defense under Faragher / Ellerth when, as here, a supervisor's harassing conduct in violation of Title VII when supervisor's harassment culminates in a "tangible

13

employment action" such as a discharge, demotion, or undesirable reassignment. (Id. at 5–6; see also Ellerth, 524 U.S. at 765.).

Whether Ms. Mason reported the alleged conduct of Mr. Brown to her store manager at that time, Mr. Williams, remains a genuine dispute of material fact. If Ms. Mason did in fact report the alleged harassment to Mr. Williams numerous times, then Defendant may not be entitled to the Faragher / Ellerth affirmative defense. Because genuine disputes of material fact remain, the Court cannot apply the defense at this time.

For all the reasons already discussed, Defendant's Motion for Summary Judgment will be **DENIED** as to Plaintiff's hostile work environment claim.

### C. Retaliatory Discharge under Title VII

In order to establish a *prima facie* case of retaliation, Plaintiff must show: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007) (additional citations omitted). "After the plaintiff establishes a prima facie case, the burden shifts to the employer to show a legitimate, nonretaliatory reason for the adverse employment action." Black v. Pan Am. Labs., L.L.C., 646 F.3d 254, 259 (5th Cir. 2011). Once the employer proves its legitimate, nonretaliatory reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation. Feist v. Louisiana, 730 F.3d 450, 454 (5th Cir. 2013). The employee may accomplish this by showing that the adverse action would not

have occurred "but for" the employer's retaliatory motive. Id.; see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, __ U.S. ___, 133 S. Ct. 2517, 2533 (2013).

Defendant argues Plaintiff cannot establish a *prima facie* case of retaliation. (Doc. 25-2 at 14). In Defendant's words, Plaintiff cannot prove a casual connection exists between "any complaint and her separation from employment because Plaintiff never complained about Brown's conduct to anyone with Defendant within any temporal proximity prior to the decision to terminate her employment." (Id.). According to Defendant, Mr. Thompson made the decision to terminate Ms. Mason on February 27, 2012.[5] (Id.). Because of this, Defendant relies on this date as opposed to Ms. Mason's official date of termination: March 12, 2012. Regardless of when Mr. Thompson made the decision to terminate Ms. Mason, the correct adverse employment action was Ms. Mason's termination on March 12, 2012. (Doc. 25-3 at 59).

To determine whether Plaintiff has demonstrated a *prima facie* case, the pertinent facts are repeated, as follows. Ms. Mason arguably engaged in protected activity within the meaning of Title VII on February 29, 2012 when she reported to Mr. Thompson that Mr. Brown had sexually harassed her in the workplace. Ms. Mason suffered an adverse employment action on March 12, 2012 when she was terminated by Mr. Thompson. At issue is whether the adverse employment action would not have occurred "but–for" Plaintiff's protected activity. Assuming for the

---

[5] The Court notes that, when deposed, Mr. Thompson testified that he had sufficient evidence to fire Ms. Mason on February 27 and he wanted to because he felt betrayed but the transcript does not state that Mr. Thompson already decided to discharge the Plaintiff. (See doc. 25-4 at 26–29). In contrast to Defendant's argument, Mr. Thompson testified that during his conversation with Ms. Mason on February 27, he gave her an opportunity to tell him the truth and so that they could possibly "work through this ordeal." (Id. at 28).

15

sake of summary judgment that Plaintiff established a *prima facie* case of retaliation, Defendant has a legitimate, non-discriminatory reason for her termination.

On February 27, two days before Ms. Mason reported any sexual harassment claims to Mr. Thompson, Ms. Mason was suspended from work as part of the internal investigation into the mentioned bogus contracts and missing inventory outlined above. The investigation uncovered over a dozen "bogus" contracts and at least one those contracts was executed to a customer after her death. The evidence discussed *supra* clearly shows that the Company had a legitimate, nonretaliatory reason to terminate Ms. Mason's employment.

Because Affordable had a legitimate, non-retaliatory reason to discharge Ms. Mason, she must be able to demonstrate that the Defendant's reason is pretext for retaliation. To prevail, Ms. Mason would have to prove that the adverse action would not have occurred but-for the employer's retaliatory motive. Ms. Mason maintains she never entered into any phony contracts. (Doc. 20-2 at 27). While she admits her manager code appears on these forged contracts, Ms. Mason argues the employees she supervised had her manager code and password. (Doc. 20-2 at 16, 28–29). Thus Mason suggests whether she entered into these contracts remains a genuine dispute of material fact to prove Defendant's reason was pretext and this dispute precludes summary judgment. (Doc. 20 at 6–7).

Regardless of whether Ms. Mason actually created these fraudulent contracts or not, Plaintiff cannot meet the high standard required of but-for causation. Plaintiff has failed in response to summary judgment to prove Ms. Mason would not have

16

been fired but-for reporting the alleged sexual harassment. Ms. Mason had already been placed on a suspension and the investigation was already underway when she made the report of Mr. Brown's conduct and this timing, without strong evidence of retaliatory motive, makes Plaintiff's argument implausible. Regardless of Ms. Mason's actual participation in these sham contracts, Defendant throughly investigated the allegations. Based on this investigation, Affordable had reason to believe Ms. Mason was involved with the fraudulent contracts and reasonable belief to fire her. Therefore, there remains no genuine dispute of material fact and Plaintiff is unable to establish Defendant's legitimate reason for termination was pretext for retaliation. For the reasons explained above, Defendant's Motion for Summary Judgment for Plaintiff's retaliation claim will be **GRANTED**.

### D. Intentional Infliction of Emotional Distress

> To prevail on this claim under Louisiana state law, Plaintiff must demonstrate:
>
> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from [its] conduct.

McCoy v. City of Shreveport, 492 F.3d 551, 563 (5th Cir. 2007) (quoting White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991)).

We are mindful that "Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that 'courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury.'" Morris v. Dillard Dep't

Stores, 277 F.3d 743, 756–57 (5th Cir. 2001) (citing Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1024–25 (La. 2000) (additional citations omitted). As Justice Knoll, writing for the majority in Nicholas explained:

> It has not been enough that the defendant has acted with an intent which is [tortious] or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim, "Outrageous!"

765 So.2d at 1022.

Plaintiff contends Ms. Mason suffered severe emotional stress because of Mr. Brown's misconduct. (Doc. 20 at 8). Specifically, Plaintiff alleges the continuous sexual harassment and retaliatory discharge caused her to lose twenty-five pounds and she can no longer work comfortably around men. (Id.). Defendant counters that Ms. Mason admitted she had not suffered severe emotional distress in her deposition. (Doc. 25-2 at 15). In her deposition, Plaintiff testified that she has never sought treatment from any health care providers for any emotional distress. (Doc. 25-3 at 41–42). Plaintiff also testified that she did not have any treatment for or issues with emotional problems, and was not on any medications for emotional problems. (Id. at 8–9).

Plaintiff has not established that Defendant's conduct rose to the level of outrageousness to warrant an intentional infliction of emotional distress claim.

Plaintiff has failed show Affordable's conduct was so outrageous or extreme that it was intolerable in a civilized society. While there is some evidence that Ms. Mason could have been emotionally distressed and says she lost twenty-five pounds, she has not shown she suffered *severe* emotional distress. Lastly, Plaintiff has not demonstrated Defendant desired intentionally to inflict emotional distress on her. Thus, Afforable's Motion for Summary Judgment regarding Ms. Mason's intentional infliction of emotional distress claim will be **GRANTED**.

III. <u>Conclusion</u>

For the reasons explained *supra*, Defendant's Motion for Summary Judgment (Doc. 17) will be **GRANTED IN PART** and **DENIED IN PART** in a separate order issued on this date. Defendant's Motion for Summary Judgment pertaining to Plaintiff's claims of retaliation and intentional infliction of emotional distress will be **GRANTED** and these causes of action will be **DISMISSED WITH PREJUDICE**. Defendant's motion will be **DENIED** as to Plaintiff's claim for hostile work environment, which will proceed to trial.

SIGNED on this 25 day of August, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT